UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mark Roote,<br><br>          Plaintiff,<br>  v.<br><br>Kershaw County; Kershaw County Sheriff's Office; Sheriff Lee Boan, individually and in his official capacity as Kershaw County Sheriff; and Danny Templar,<br><br>          Defendants. | Case No.: 3:25-cv-01392-SAL-SVH<br><br>MOTION<br>AND<br>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

Now come Defendants, by and through their undersigned counsel who hereby move pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting Defendants summary judgment in the above-captioned action on the grounds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. A separate memorandum is not being submitted as the grounds for the motion are fully set forth herein as allowed by Local Civil Rule 7.04 (D.S.C.).

## CASE SUMMARY

On October 10, 2024, Plaintiff filed a Summons and Complaint in the Court of Common Pleas for Kershaw County. The case was timely removed to this Court and Defendants filed and served their Answer on April 4, 2025.

The Complaint contains a total of ten (10) causes of action as follows: First Cause of Action – State Law Claim for False Imprisonment against the Kershaw County Sheriff's Office (hereinafter "KCSO"); Second Cause of Action – State Law Claim for False Imprisonment against the Kershaw County (hereinafter "County"); Third Cause of Action – State Law Claim for Negligence and Gross Negligence against the KCSO; Fourth Cause of Action – State Law Claim for Negligence and Gross Negligence against Kershaw County; Fifth Cause of Action – State Law

Claim for Battery Against KCSO; Sixth Cause of Action – 42 U.S.C. § 1983 Violation for Excessive Force Against Sheriff Lee Boan; Seventh Cause of Action – 42 U.S.C. § 1983 First Amendment Violation Against Sheriff Lee Boan and County Administrator Danny Templar; Eighth Cause of Action – 42 U.S.C. § 1983 Frist Amendment Violation Against Danny Templar; Ninth Cause of Action - 42 U.S.C. § 1983 First Amendment Violation Against County; Tenth Cause of Action – 42 U.S.C. § 1983 First Amendment Violation Against County.

The time to complete discovery has closed and this motion is ripe for adjudication. Defendants now seek judgment as a matter of law in their favor as argued below.

## STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As a practical matter, this standard means that a plaintiff "must produce sufficient evidence to reasonably support a jury verdict in its favor." *Grooms v. Mobay Chem. Corp.*, 861 F. Supp. 497, 501 (D.S.C. 1991) (emphasis added), aff'd 993 F.2d 1537 (4th Cir. 1993), cert. denied, 510 U.S. 996, 114 S.Ct. 561 (1993). Thus, "[t]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## FACTUAL ALLEGATIONS

This case involves an incident that occurred on October 11, 2022, when Plaintiff Mark Roote (hereinafter "Roote") attended a Kershaw County council meeting, which was also attended by the County Sheriff, Lee Boan and the County Administrator, Danny Templar. The facts of this case should largely not be in dispute as the council meeting was recorded and is a matter of public record on YouTube, in addition to security cameras that recorded the meeting from multiple angles

2

without sound, in addition to a private recording taken by an individual sitting in the gallery of the council chambers. [Exhibit 1 - YouTube Video of October 11, 2022 County council meeting[1]; Exhibit 2 – Individual Cell Phone Recording; Exhibit 3 – Council Chambers Security Video 1 (no sound); Exhibit 4 – Council Chambers Security Video 2 (no sound); Exhibit 5 – Council Lobby Video 1 (no sound); Exhibit 6 – Council Lobby Video 2 (no sound); Exhibit 7 – Council Building Exterior Video (no sound)].

The County has passed and filed Ordinance No. 387.2023, which is the Amended and Restated Ordinance by Kershaw County Council Determining Rules and Order of Business. [Exhibit 8 – County Ordinance]. The following provisions of the Ordinance are relevant to the issue before the Court:

- Section 2.5(a) of the Ordinance provides the Order of Business for the agenda of council meeting. The agenda provides for public comments as the sixth matter on each agenda. [Ex. 8, p. 2];

- Section 2.5(d) provides rules of conduct for public comment and rules for conduct of public hearings may be established by County council and altered or amended by a single vote. [Ex. 8, p. 3];

- Appendix I provides guidelines for public hearings including the following:
    - Any person wishing to speak at a public hearing must sign up to speak prior to the hearing; [Ex. 8, p. 11]
    - When the public hearing is opened, persons are notified how many people have signed up to speak; [*Id.*]

---

[1] The video can be viewed at the following address:
https://www.youtube.com/live/hVJG_EBhttps://www.youtube.com/live/hVJG_EBiQ1w?si=IzSc5sueFGZ2dV2niQ1w?si=IzSc5sueFGZ2dV2n

  - While each person is limited to a maximum of 10 minutes to speak, that time limit can be altered or amended by a single vote of County council. [*Id.*].
- Appendix III provides guidelines for public comments including the following:
  - The public comment period is limited to a maximum of five minutes per individual. [Ex. 8, p. 11].

In implementing the public comment period, County council decided that the maximum period of time for all comments would be thirty minutes per public hearing. [Exhibit 9 – Templar Depo, p. 10, lines 4-p. 11, line 18]. The total amount of time is then divided by the total number of individuals who signed up in advance to speak at the public hearing. [*Id.*]. If three people sign up to speak, each would be given ten minutes of time. If ten people sign up to speak then each person would be given three minutes to speak. [*Id.*].

In the present case, the public comments portion of the agenda began at the thirty-nine minute and thirty-second (0:39:30) part of Exhibit 1.[2] The chair announced the agenda item was public comments and then yielded to the County Attorney, Ken Dubose. For reference, Mr. DuBose is seated on the right-hand side of the table as you are looking at County Council, and County Administrator Danny Templar is seated on the right side of the table.

Mr. DuBose announced that nine (9) people signed up to speak. Mr. DuBose further announced per the rules governing public comments as approved by council, the maximum time for comment was five minutes per speaker or a total of thirty minutes per session. Since there were nine people who signed up to speak, Mr. DuBose stated that each speaker would have approximately three minutes and twenty seconds to speak. Mr. DuBose then announced that he

---

[2] Going forward, references to any video will be to the 0:00:00 format for hour:minute:second of the recording.

had a bell and was instructed to ring the bell when a person reached the three minute and twenty second mark so the person would know their time to speak has ended. [Ex. 1, 0:39:37].

The chair then read the rules regarding public comments. [Ex. 1, 0:40:12]. The chair asked Mr. DuBose to start the thirty-minute time period for public comment and to announce the names of each person who signed up to speak. [Ex. 1, 0:42:10]. A summary of the times of each of the first seven speakers is set forth as follows:[3]

- Speaker 1 started at 0:42:21 and stopped at 0:44:07 for a total time of 0:01:46;
- Speaker 2 started at 0:44:15 and Mr. DuBose rang the bell at the 0:48:09 mark after he spoke for 0:03:54. Speaker 2 stopped at 0:48:48 for a total time of 0:04:32;
- Speaker 3 started at 0:49:21 and stopped at 0:52:21 for a total time of 0:03:00;
- Speaker 4 started at 0:52:40 and stopped at 0:56:26 for a total time of 0:03:45;
- Speaker 5 started at 0:56:44 and Mr. Dubose rang the bell at the 1:00:51 mark after she spoke for 0:04:07. Speaker 2 stopped at 1:00:51 for a total time of 0:04:13;
- Speaker 6 started at 1:01:15 and stopped at 1:05:19 for a total time of 0:04:04;
- Speaker 7 started at 1:05:32 and stopped at 1:08:51 for a total time of 0:3:19:00.

[Ex. 1].

Roote was the eighth speaker and took the podium at 1:09:03. After a short introduction, Roote looked to Mr. DuBose and stated "Don't bother touching that bell." [Ex. 1, 01:09:10]. Roote then gave an uninterrupted prepared speech until Mr. DuBose rang the bell at 1:13:04, which was four minutes into his speech. Roote did not stop or acknowledge the bell and continued to read his prepared speech uninterrupted until 1:13:19 when council member Cook interrupted and asked the chair that either the chair should enforce the bell and time limit or let the other people who had

---

[3] Roote was the eighth speaker that evening.

to stop after the bell to get back up and finish what they had to say. In response, the chair stated that he thought Roote had a few more seconds and was waiting for Mr. DuBose, when Roote stated, "I'm not stopping until I'm done." [Ex. 1, 1:39:37]. The chair replied, "yes you are," and Roote stated, "No I'm not." At that point, the chair asked Roote to remove himself from the podium and asked that the podium microphone be turned off as Roote then continued to read his prepared speech.

Roote continued reading his prepared speech and the chair asked that Roote be removed at which time Sheriff Boan is seen approaching Roote from the left of the screen with his hands in his pockets. [Ex. 1, 1:13:55]. On the personal cell phone video, Exhibit 2, as Sheriff Boan is approaching Roote, Roote turns his head to the left to look at Sheriff Boan and states in a commanding voice, "I am not walking away." [Ex. 2, 0:04:53]. Sheriff Boan stands next to the podium, with his hands in his pockets, and continues to let Roote read his prepared speech. A second deputy sheriff approaches Roote from the right side and stands watching Roote continue to read his speech.

Since the chair had the microphones turned off, Exhibit 2 provides audio of Roote continuing to read his speech.

As evidenced by Exhibits 3 and 4, both show Roote's complete disregard for the established rules and the chair's request that he step aside from the podium is causing a breakdown in the hearing. The council members are seen talking to each other. The videos show those citizens in attendance looking around, talking to each other, and getting up and moving around the room. [Ex. 3 and Ex. 4, 0:05:12]. On the personal cell phone video, by the 0:5:44 mark, the noise of the other citizens having personal conversations is noticeable. [Ex. 2, 0:5:44]. Yet, Roote was allowed to continue to read his prepared speech.

By the 0:6:25 mark on Exhibit 2, it is clear from the noise in the gallery that the public hearing has broken down. At or about this point, County Administrator Templar stands up from the table and says to Sheriff Boan, I want him out…" Roote spoke at the podium for 0:06:28 before any attempt to remove him occurred.[4] Roote then tells County Administrator Templar that he has not broken any laws, to which Mr. Templar stated, "I didn't say that you did, but we're trying to run a meeting here." Sheriff Boan then puts his hand on Roote's left arm and attempts to guide him away from the podium at which time Roote flops to the floor in "passive resistance." [Ex. 1, 1:15:32; Ex. 2, 0:06:29; Ex. 4, 0:06:29; Exhibit 11 – Roote Depo, p. 63, lines 8-19].

After Roote flopped to the floor, Sheriff Boan and another deputy attempted to slide Roote across the carpeted floor by the arms out of the council chambers and Roote refused to cooperate. As they were almost to the exit of the room, Roote yelled he was "trying to be a good citizen and show how dirty these fuckers are" at which time Sheriff Boan advised Roote that he was now under arrest. The deputy sheriff almost contemporaneously with Sheriff Boan's statement lost his balance and fell. Sheriff Boan then commanded Roote several times to put his hand behind his back, which Roote refused stating he was a disabled veteran. Roote is then slid on the floor out of the chambers into the lobby, handcuffed, walked out of the building and taken to the Kershaw County detention center. [Ex. 2, 0:06:42; Ex. 5, 0:00:08; Ex. 6, 0:00:08; Ex. 7, 0:00:08].

Roote was charged with resisting arrest and disorderly conduct. [Exhibit 12 - Charges]. Those charges remain pending.

## ARGUMENTS

**I.     Defendant County is entitled to judgment as a matter of law in their favor on the claims for the alleged violation of 42 U.S.C. § 1983.**

---

[4] A copy of Roote's prepared speech was produced during discovery and attached as Exhibit 10. As shown by the highlight section on page 2, this is Roote's last words prior to his removal. Roote had a significant portion of the speech yet to be read.

7

The Complaint presented duplicate claims alleging County, through its employee County Administrator Danny Templar, violated Roote's First Amendment right by cutting off his criticism of County Council. [ECF 1-1, ¶¶ 74, 80].

42 U.S.C. § 1983 provides in part:

Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. (Emphasis added).

In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the United States Supreme Court stated that neither states, governmental entities that are considered "arms of the State," nor officials acting in their official capacities, are "persons" as defined by 42 U.S.C. §1983 and, therefore, are not subject to suit under § 1983. *Will*, 491 U.S. at 69-70.

Defendant County is not a "person" as defined by § 1983 and they are entitled to dismissal as a matter of law.

To the extent any argument is made in response the Defendant has waived its right to sovereign immunity by removing this state court action to federal court, the argument fails.

The Complaint has alleged state and federal law questions against these and other defendants. Accordingly, Defendant has not waived any immunity defense by seeking removal to have the applicable defenses adjudicated in a federal forum. *See* Stewart *v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005) ("[b]y permitting defendants to remove to federal court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction,' 28 U.S.C.A. § 1441(a) (West 1994), the removal statute makes available a federal forum in which defendants can assert substantive defenses, so long as one or more of the claims fall within the subject matter jurisdiction of the district courts"]; *Passaro v. Virginia*, 935 F.3d

243, 247 (4th Cir. 2019) ("As Passaro points out, the other courts of appeals have split on whether to adopt *Stewart's* holding: some have followed *Stewart*, others have rejected it, and still others have adopted a supposed 'middle ground' . . . Nothing in these out-of-circuit cases makes us inclined to revisit *Stewart* . . . ."); *Timpson v. McMaster*, 437 F. Supp. 3d 469, 482 (D.S.C. 2020).

For the arguments set forth, Defendant County is entitled to judgment as a matter of law in its favor on the 42 U.S.C. § 1983 claims.

## II. Defendant Danny Templar is entitled to judgment in his favor as a matter of law on the alleged violation for 42 U.S.C. § 1983 related to Roote's First Amendment clam.

The Complaint alleges County Administrator Templar violated Roote's First Amendment right to free speech when he actively prevented Roote from engaging in protected speech. [ECF 1-1, ¶ 66].

> In the traditional public forum, which includes the streets, sidewalks, parks, and general meeting halls, speakers' rights are at their apex. Speakers have a right to speak free of any government-imposed restrictions on their speech unless the restrictions are reasonable time, place, and manner restrictions; are content-neutral; and are "narrowly tailored" to serve a significant governmental interest

*Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 384 (4th Cir. 2008)

"Distinct from the traditional public forum is the 'limited public forum, - which governmental entities may create in a specified location for a limited use, so long as they do not impose those limits in a manner that discriminates based on the speaker's viewpoint. . . .'" *Id.* at 384-85.

In a limited public forum, "a government entity . . . is justified in limiting its meeting to discussion of specified agenda items and in imposing reasonable restrictions to preserve the civility and decorum necessary to further the forum's purpose of conducting public business. But any restriction must not discriminate on the basis of a speaker's viewpoint." *Id.*

The Fourth Circuit has accepted the government's ability to restrict speech in limited public forums as follows:

1. Speech at public meetings called by government officials for discussion of matters of public concern is entitled to normal first amendment protections against general restrictions or ad hoc parliamentary rulings by presiding officials.

2. Because of government's substantial interest in having such meetings conducted with relative orderliness and fairness to all, officials presiding over such meetings must have discretion, under the 'reasonable time, place and manner' constitutional principle, to set subject matter agendas, ***and to cut off speech which they reasonably perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner***.[5] This obviously contemplates that in this setting the content of speech may properly be the conscious target of state action (where it is cut off for irrelevance or manner of delivery), or its collateral victim (when it is cut off for excessive duration). But this consequence assuredly lies within well-established constitutional principles, once it is accepted, as I think we must, that disruption of the orderly conduct of public meetings is indeed one of the 'substantive evils that [government] has a right to prevent.'

*Id.* at 385 (emphasis added).

Other federal circuits have also approved the government's ability to limit the time for speakers at a limited public forum. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (concluding "[t]he three-minute time limitation imposed on . . . speech was a restriction appropriately designed to promote orderly and efficient meetings"); *Wright v. Anthony*, 733 F.2d 575, 577 (8th Cir. 1984) (holding five-minute limitation on presentation to congressman was a reasonable restriction and served significant governmental interest in conserving time and ensuring that all had an opportunity to speak); *Kindt v. Santa Monica Rent Control Bd.*, 67 F.3d 266, 271 (9th Cir. 1995) (stating "[t]he Board regulations restricting public commentary to three minutes per

---

[5] The "disruption" to which this interest extends -- as an "evil" to be avoided -- is of course not confined to raw, physical violence, but includes any conduct that significantly violates generally or specially established rules of parliamentary order, and "disrupts" by that means the orderly conduct of a meeting. *Id*.

item at the end of each meeting are the kind of reasonable time, place, and manner restrictions that preserve a board's legitimate interest in conducting efficient, orderly meetings").

As discussed in the factual allegations above, Roote was not limited in any way in the content of this prepared speech. Roote was not interrupted when Mr. DuBose rang the bell when Roote's speech reached four minutes. Roote was interrupted indirectly after speaking for four minutes and fifteen seconds when a council member raised an issue about the length of time Roote was being given to the council chair. Even when the microphone was turned off, Roote continued to speak at the podium for six minutes and thirty-eight seconds before County Administrator Templar asked Sheriff Boan to remove Roote from the podium.

It is patently clear from the videos that Roote's disregard of the council rules concerning the length of time given to each speaker created a significant disruption of the council meeting. Citizens are seen speaking to each other, and some got up and walked about the council chambers. The council members were engaged with each other. The ninth speaker had to wait to speak until Roote was removed and the meeting was brought back to order. [Ex. 1, 1:18:16]. Additionally, as Sheriff Boan approached Roote, Roote turns his head to the left to look at Sheriff Boan and stated in a loud and commanding voice, "I am not walking away." [Ex. 2, 0:04:53].

From the indisputable evidence set forth in the videos, County Administrator Templar was well within his right to have Roote removed from the podium and public hearing. *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004) (affirming summary judgment finding "the presiding officer of a public meeting to allow a speaker to try to hijack the proceedings, or to filibuster them, would impinge on the First Amendment rights of other would-be participants." Further finding the court had "*no difficulty sustaining the decision to remove [plaintiff] on that basis*") (emphasis added).

11

For the arguments and evidence set forth, Defendant Danny Templar is entitled to judgment as a matter of law in his favor on Roote's First Amendment claim.

**III.     Defendants Lee Boan and Dany Templar are entitled to judgment as a matter of law in their favor on the claims for the alleged violation of 42 U.S.C. § 1983 for retaliation.**

The Complaint alleges Sheriff Boan and County Administrator Templar initialed Roote's arrent and criminal charges in retaliation for Roote's speech. [ECF 1-1, ¶ 56].

First, as evidenced by the videos, neither Sheriff Boan nor County Administrator Templar wanted or intended to arrest Roote, but simply wanted to remove him from the podium to restore order to the public hearing. Specifically, when Sheriff Boan is asked to remove Roote, Roote tells County Administrator Templar that he has not broken any laws, to which Mr. Templar stated, "I didn't say that you did, but we're trying to run a meeting here."   [Ex. 2, 0:06:29]. Sheriff Boan did not inform Roote that he was under arrest until he shouted at County Council that he was trying to show how corrupt "those fuckers are" after having been slid on the ground from the podium to the exit. [Ex. 2, 0:06:48].

Both Sheriff Boan and County Administrator Templar testified that neither had any intention of having Roote arrested, but that Roote's defiance in refusing to yield the podium and then dropping to the ground and refusing to move caused the public hearing to break down further. [Exhibit 13 - Sheriff Boan Depo p. 11, line 7-p. 12, line 25; Ex. 9, p. 13, line 2-p. 15, line 2].

Roote was not limited in any way in the content of his prepared speech.  Roote was not interrupted when Mr. DuBose rang the bell when Roote's speech reached four minutes.  Roote was interrupted indirectly after speaking for four minutes and fifteen seconds when a council member raised an issue about the length of time Roote was being given to the council chair.  Even when the microphone was turned off, Roote continued to speak at the podium for six minutes and thirty-eight seconds before County Administrator Templar asked Sheriff Boan to remove Roote from the

podium. Roote's removal, subsequent arrest, and criminal charges had nothing to do with the content of his speech, but related directly to Roote's complete disregard for the legitimate and legal rules for the public hearing and his decision to put his personal rights over those of the other citizens who had equal rights to participate and watch the public hearing, by creating a public disturbance causing the council meeting to stop completely until the issue was resolved.

Finally, from the indisputable evidence set forth in the videos, County Administrator Templar was well within his right to have Roote removed from the podium and public hearing and, therefore, Sheriff Boan was equally within his legal authority to physically remove Roote from the public hearing. *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004) (affirming summary judgment finding "the presiding officer of a public meeting to allow a speaker to try to hijack the proceedings, or to filibuster them, would impinge on the First Amendment rights of other would-be participants." Further finding the court had "*no difficulty sustaining the decision to remove [plaintiff] on that basis*") (emphasis added). When Roote not only refused to leave, but then flopped to the ground in passive resistance, Sheriff Boan was within authority to place Roote under arrest and charge him accordingly for creating a public disturbance as more fully discussed below.

For the arguments and evidence set forth, Defendants Lee Boan and Danny Templar are entitled to judgment as a matter of law in their favor on Roote's First Amendment retaliation claim.

**IV.    Defendants Lee Boan and KSCO are entitled to judgment as a matter of law in their favor on the claims for the alleged violation of 42 U.S.C. § 1983 and negligence/gross negligence for excessive use of force.**

The Complaint alleges Sheriff Boan used excessive force against Roote by forcefully arresting him. [ECF 1-1, ¶ 51]. The Complaint also alleges the KSCO failed to exercise slight care in arresting Plaintiff and ensuring he was not hurt during the process. [ECF 1-1, ¶42].

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of citizen is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

The constitutional inquiry is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397. The Court must evaluate the reasonableness of an officer's use of force under the totality of the circumstances, including but not limited to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

As argued in more detail above, County Administrator Templar was well within his right to have Roote removed from the podium and public hearing for Roote's willful refusal to step aside from podium after he exceeded the allotted to speak by over two minutes. *Twp. of Ind.*, 385 F.3d 281 (affirming summary judgment finding "the presiding officer of a public meeting to allow a speaker to try to hijack the proceedings, or to filibuster them, would impinge on the First Amendment rights of other would-be participants." Further finding the court had "*no difficulty sustaining the decision to remove [plaintiff] on that basis*") (emphasis added). Accordingly, Sheriff Boan was well within his legal authority to remove Roote from the council chamber based on the request as well as Roote's clearly disruptive behavior at the meeting.

If Roote had simply complied with prior requests to stop speaking and step aside, there would have been no need to use force to remove him from the chamber. Moreover, when Roote intentionally flopped to the floor in passive resistance to the lawful request, Sheriff Boan had no other option but to use force to remove Roote from the chamber.

As previously discussed, the entire interaction was recorded. As an initial matter, it is unclear whether the excessive force claim is related to the moments *after* Sheriff Boan informed

Roote that he was under arrest, or if the alleged excessive use of force occurred from the time Roote dropped to the ground and was being slid on the ground towards the exit.

Regardless, the only force used was Sheriff Boan and another deputy pulling Roote's arms and shoulder area, sliding him on the carpeted floor toward the exit. The video clearly shows Sheriff Boan did not use any "loosening techniques," such as arm or neck locks, choke holds, or other grappling measures.

Even after Sheriff Boan informed Roote that he was under arrest and commanded Roote to place his arms behind his back to be handcuffed to which Roote refused to comply on several occasions, Sheriff Boan did not use any excessive force or attempt to force Rootes arms behind his back. In fact, after Roote refused to comply with lawful orders after being informed he was under arrest, Sheriff Boan took additional steps to slide Roote out of the chamber with the assistance of another deputy. The lobby camera shows Roote being slid into the lobby, placed on his stomach, and handcuffed at which time he was stood up and escorted to a police cruiser to be transported to the Kershaw County Detention Center. [Ex. 5 and Ex. 6, 0:00:09].

Sherrif Boan's use of force was objectively reasonable under the totality of the circumstances, including but not limited to the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Id.* Roote was actively creating a disturbance, he shut down the council meeting, and he was lawfully removed based on his actions as discussed above. Roote was actively resisting his removal, and when informed of his arrest, he actively resisted being handcuffed subject to his arrest. Sheriff Boan used a reasonable amount of force to remove Roote from the chamber, which was to slide Roote on the ground by his arms and shoulder area. Accordingly, Sheriff Boan's actions and use of force are objectively reasonable under the Fourth Amendment, and he is entitled to judgment as a matter of law in his favor. *Id.*

As the evidence demonstrates as a matter of law that Sheriff Boan's use of force was objectively reasonable under the Fourth Amendment, Roote's state common law claim against the KCSO for failure to exercise slight care during the arrest to prevent harm also fails as a matter of law. *See Doe v. Greenville Cty. Sch. Dist.*, 375 S.C. 63, 71, 651 S.E.2d 305, 309 (2007) (Gross negligence is defined as the failure to exercise slight care). Therefore, the KCSO is entitled to judgment as a matter of law in its favor on the gross negligence claim related to the amount of force used during the arrest.

**V.     Defendants Lee Boan and Dany Templar are entitled to qualified immunity.**

> Qualified immunity shields from civil damages liability government officials performing discretionary functions so long as the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." The principle of qualified immunity reflects the concern that civil damages awards against public officials for every judicially determined violation of constitutional rights would prove too expensive to the public, discourage public service employment, and impair governmental decision-making.

*Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 398 (4th Cir. 1990).

To determine whether a defendant is entitled to qualified immunity, the right at issue must have been clearly established at the time of the alleged violation. *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019).

> Ruling on a defense of qualified immunity therefore requires (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the officer's position would have known that doing what he did would violate that right. The first two of these present pure questions of law for the courts.

*Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

As discussed, County Administrator Templar was legally justified to request that Roote be removed from the podium after Roote refused to stop speaking after repeated warnings when his

16

time expired. Additionally, Sheriff Boan was legally justified in removing and subsequently arresting and charging Roote based on his actions, which created a public disturbance.

Accordingly, both are entitled to qualified immunity for their actions and judgment as a matter of law on the federal claims against them.

VI. **Defendants County and KSCO are entitled to judgment as a matter of law in their favor on the claims for false imprisonment and battery.**

The Complaint alleges claims for false imprisonment against KSCO and County and battery as to KSCO related to his arrest and detainment. [ECF 1-1, ¶¶ 30, 36, 48].

To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful. *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 440-41, 629 S.E.2d 642, 651 (2006). However, "[a]n action for false imprisonment cannot be maintained where one is arrested by lawful authority." *Jones v. Columbia*, 301 S.C. 62, 64, 389 S.E.2d 662, 663 (1990). The fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest. *Law*, 368 S.C.at 441, 629 S.E.2d at 651. "Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests on such grounds as would induce an ordinarily prudent and cautious man, under the circumstances, to believe likewise." *Id.* While the question of whether probable cause exists is ordinarily a jury question, it may be decided as a matter of law when the evidence yields but one conclusion. *Id.*

In the present case, it has already been established that County had the legal authority to have Roote removed from the public hearing to restore the order that Roote disrupted with his refusal to yield the podium when his allotted time to speak expired by more than two minutes. *Steinburg*, 527 F.3d at 384 (adopting the principle that the "disruption of the orderly conduct of

public meetings is indeed one of the 'substantive evils that [government] has a right to prevent' when limiting speech in limited public forums).

As detailed above, Sheriff Boan and another deputy were sliding Roote towards the exit after he intentionally flopped to the ground in passive resistance, when Roote yelled he was "trying to be a good citizen and show how dirty these fuckers are" at which time Sheriff Boan advised Roote that he was now under arrest. Roote's statement about "how dirty these fuckers are" was directed at the council members. Once Sheriff Boan notified Plaintiff he was under arrest, Roote continued his passive resistance and refused to comply with the lawful order to place his hands behind his back. Roote was charged with public disorderly conduct (S.C. Code § 16-17-530) and resisting arrest (S.C. Code § 16-9-320). [Ex. 13].

South Carolina's public disorderly conduct statute provides in part that a person who conducts himself in a disorderly or boisterous manner or uses obscene or profane language at any public place or gathering is guilty of a misdemeanor. S.C. Code § 16-17-530. The video clearly shows Roote's conduct in public after being removed from the podium was disorderly and then became boisterous when he used obscene or profane language directed at council. Accordingly, as a matter of law there was probable cause to support his arrest and charge of public disorderly conduct.

South Carolina law further provides it is unlawful for a person to resist an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer. S.C. Code § 16-9-320. It is evident from the videos that Roote resisted being handcuffed after Sheriff Boan clearly informed him that he was under arrest. There can be no doubt that Roote knew he was being placed under arrest by a law enforcement officer. Accordingly, as a matter of law there was probable cause to support his charge with resisting arrest.

Finally, the probable cause affidavit completed by Sheriff Boan set forth the facts upon which Roote's arrest and charges were based. [Ex. 12, p. 3]. Roote admitted that each statement set forth by Sheriff Boan in the probable cause affidavit was correct. [Ex. 11, p. 65, line 23-p. 69, line 16].

As there was probable cause for Roote's arrest and charges, the County and KSCO are entitled to judgement as a matter of law in their favor on the false imprisonment claim. *Jones*, 301 S.C. at 64, 389 S.E.2d at 663 (stating "[a]n action for false imprisonment cannot be maintained where one is arrested by lawful authority.").

Under South Carolina law, "a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn-Dixie Greenville*, 318 S.C. 171, 175, 456 S.E.2d 429, 432 (Ct. App. 1995). However, A police officer who uses reasonable force in effectuating a lawful arrest is not liable for assault or battery. *Horton v. City of Columbia*, 408 S.C. 27, 37, 757 S.E.2d 537, 542 (Ct. App. 2014) (concluding that because arrest was lawful, the plaintiff's claim for assault and battery failed as a matter of law and summary judgment was appropriate.).

As there was probable cause for Roote's arrest and charges, KSCO are entitled to judgement as a matter of law in their favor on the battery claim. *Id.*

VII. **Defendant County is entitled to judgment as a matter of law in its favor on the claim for gross negligence related to medical care.**

The Complaint alleges County failed to take the slightest care in evaluating Roote's medical needs after his arrest. [ECF 1-1, ¶ 45].

Under the S.C. Tort Claims Act, a "governmental entity is not liable for a loss resulting from. . . responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, *prisoner*, inmate, or client of any governmental

19

entity, except when the responsibility or duty is exercised in a grossly negligent manner." *Bass v. S.C. Dep't of Soc. Servs.*, 414 S.C. 558, 571, 780 S.E.2d 252, 258 (2015) citing S.C. Code § 15-78-60(25). Gross negligence is defined as the failure to exercise slight care. *Doe*, 375 S.C. at 71, 651 S.E.2d at 309.

Attached as Exhibit 15 are selected documents from Roote's intake processing at the Kershaw County Detention Center. As evidenced by the documents, an Intake Assessment Form was completed, which in part stated that the arresting officer was not aware of any medical condition or injury sustained by Roote that required immediate medical attention. [Ex. 14 p. 2, No. 7]. Additionally, the detention center completed a medical history. [Ex. 14 p. 3]. A complete copy of body cam video of Roote's transport and booking at the detention center is attached as Exhibit 15.

## CONCLUSION

For the reasons set forth herein, these Defendants respectfully request an Order granting them judgment as a matter of law in their favor.

          HOWSER, NEWMAN & BESLEY, LLC

          *s/Damon C. Wlodarczyk*
          Damon C. Wlodarczyk, SC Bar 70460
          Post Office Box 12009
          Columbia, South Carolina 29211
          (803) 758-6000
          damonw@hnblaw.com
          Attorney for Defendants

Columbia, South Carolina
November 17, 2025