Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
CASE NO. 3:25-cv-01392-SAL-SVH

_____
MARK ROOTE,                    )
                               )
       PLAINTIFF,              )
                               )           DEPOSITION
                               )
    VS.                        )              OF
                               )
KERSHAW COUNTY; KERSHAW        )          DANNY TEMPLAR
COUNTY SHERIFF'S OFFICE;       )
SHERIFF LEE BOAN,              )
INDIVIDUALLY AND IN HIS        )
OFFICIAL CAPACITY AS           )
KERSHAW COUNTY SHERIFF; AND)
DANNY TEMPLAR,                 )
                               )
       DEFENDANTS.             )


   THE DEPOSITION OF DANNY TEMPLAR, TAKEN BEFORE JILL

BISHOP EDWARDS, CVR-CM, CERTIFIED VERBATIM REPORTER AND

NOTARY PUBLIC IN AND FOR THE STATE OF SOUTH CAROLINA,

COMMENCING AT THE HOUR OF 3:32 P.M., THURSDAY, THE 13TH DAY

OF NOVEMBER, 2025, VIA VIDEO CONFERENCE.

Bishop Reporting Services, LLC

Danny Templar
11/13/2025

Page 10

| | | |
|---|---|---|
| 1 | A | At that time, I think it was John DuBose, the current |
| 2 | | John DuBose -- I call him JD3 -- his dad, Ken DuBose. |
| 3 | | I'm sorry. |
| 4 | Q | Okay.  And do -- so the announcement for how much time |
| 5 | | each speaker is going to have, that takes place right |
| 6 | | before the meeting, right? |
| 7 | A | Yeah.  So, typically, the chair, once -- once we gavel |
| 8 | | in, we'll -- you know, we get to that portion.  It's |
| 9 | | several items down.  After the invocation and the |
| 10 | | pledge and things like that, we go to public comment. |
| 11 | | Typically, the attorney will say, Mr. Chair, we have |
| 12 | | ten speakers for the allotted time of 30 minutes, and |
| 13 | | you have three minutes apiece and things like that.  He |
| 14 | | kind of breaks down, and it's just kind of understood. |
| 15 | | And oftentimes the chair will reiterate, you know, you |
| 16 | | know, Mr. Templar, you have three minutes to speak and |
| 17 | | kind of lay out before the -- all of that, there's some |
| 18 | | rules.  Council does not interact and kind of go over |
| 19 | | some housekeeping, basically. |
| 20 | Q | So the speakers wouldn't know about the specific time |
| 21 | | limit until they arrive at the meeting, right? |
| 22 | A | Right.  So, you wouldn't go into -- and even once you |
| 23 | | sign up and if you were new and you had never done it |
| 24 | | before, you would not know about that.  So, the chair |
| 25 | | is pretty good about saying, for each person, |

Bishop Reporting Services, LLC

Danny Templar
11/13/2025

```
                                                      Page 11
 1        especially that first person, you have X amount of
 2        minutes to -- you know, please go ahead and kind of lay
 3        out the groundwork there.
 4   Q    Is there an alternate process for someone to
 5        communicate to the council if they are not going to be
 6        able to get their message out within the allotted time
 7        at a meeting?
 8   A    You know, so there is a little wiggle room, because you
 9        could typically tell, when somebody is giving a
10        presentation, if they are towards the end.  You know,
11        we never want to really deny anyone.  Like, if you've
12        really given a compelling thought or, you know,
13        presentation, you say -- typically, we'll warn and say,
14        you have 30 seconds.  And if they hit that mark, the
15        person may say, well, I just have one more thing.  And
16        so there's a -- it's a little -- I don't want to say
17        diffuse, but there's a little discretion in there to
18        where you can -- it bubbles back and forth.
19   Q    Who is in charge of making that decision?  So, if we're
20        going to exercise that discretion, who would be the one
21        that does that?
22   A    That would be typically the chair, as they are running
23        the meeting.  And sometimes a council member will ask
24        the chair, you know, can we give this individual just a
25        few more minutes to finish?  And so, depending on --
```

BISHOP REPORTING SERVICES, LLC

Danny Templar
11/13/2025

Page 12

1      and it's -- again, it just bubbles back and forth.
2   Q  Is there any defined reason why you might give someone
3      more time, or is it just sort of a call in the moment?
4   A  I think it's complimentary, you know, to just -- you
5      know, if somebody just has one more little thing they
6      want to say to just kind of button it up, I think it's,
7      you know, just to more err on the side of the citizen
8      than to just be -- but now, if you have, you know, a
9      30-minute dissertation and you've got three minutes,
10     certainly, you know, that -- that's going to be hard to
11     do.  But, you know, having done it -- having sat there
12     for over 10 years almost, you just -- you can tell the
13     tempo when somebody's kind of buttoning up and just
14     kind of learn that.
15  Q  What's your specific role in these meetings?
16  A  So, the true purpose of a council meeting is -- it is a
17     meeting between the administrator, the CEO, and the
18     council members, the policymakers, with the attorney
19     there to guide in any legal matters.  So, we are
20     discussing County business, contractual items, anything
21     that we may have brought forth in terms of ordinances,
22     practices, things of that nature.  So, some meetings, I
23     can sit there and not say anything.  Other meetings,
24     I'm on trial sometimes.  So, it varies.
25  Q  When Mr. Roote was arrested, did you have any

Bishop Reporting Services, LLC

Danny Templar
11/13/2025

```
                                                          Page 13
 1           communication with Sheriff Boan prior to his arrest?
 2    A      I -- to the best of my memory, I had -- this had gone
 3           on -- you know, Mark was given, what I thought, a
 4           little more discretionary time.  Beyond that he -- he
 5           came up and kind of had postured and laid out his
 6           intent to not necessarily, you know, abide by much of
 7           the rules and just a little more defiant.  But some
 8           people, you know, sometimes are just kind of saber
 9           rattling.  But he -- he had postured a little bit in a
10           defiant kind of manner.  So, he went on -- and again,
11           we have this from time to time, angry citizens that it
12           is a forum for that.  So, but once it went on, it just
13           started -- his commentary, he went to the time mark.
14           He was over and just communicated with, if I'm not
15           mistaken, by Chairman Burns that he was over.  And I
16           think they muted the mics.  And then it just -- to me,
17           it felt like the situation started to spiral a little
18           bit.  It's -- we just started to lose the decorum of
19           the room.  It felt like a little disorder.  And, you
20           know, it got to a point where I just stood up and I
21           said, Mark, you're done.  We're done here.  You've had
22           your time.  And I thought we were very charitable in
23           terms of allowing him to vent and say, but it kind of
24           hit critical mass.  We had a lot of work to do.  And so
25           I stood up.  I said, you're done.  I said, Sheriff -- I
```

Bishop Reporting Services, LLC

Danny Templar
11/13/2025

Page 14

```
 1    asked the sheriff, I said, Sheriff, can you escort him
 2    out?  And the sheriff came over and just kind of stood,
 3    because I want to say that Mark was maybe still
 4    talking, so Lee just kind of stood in proximity and
 5    just kind of, again, was charitable to his -- you know,
 6    we didn't want to -- we didn't want to do anything
 7    other than just resume the meeting.  That was the
 8    spirit of my action.  I get it.  Look, people come in
 9    there and they cut me a new one, and everybody else.
10    But it's just, at the end of the day, we just -- I
11    wanted the meeting to resume, and it had went well off
12    the rails.  It was -- you know, speaking for myself, I
13    never had any intent of having him arrested or anything
14    like that.  I know he kind of fell down in a passive
15    kind of manner.  So, we -- then it -- again, it started
16    to spiral like a little more, but, you know,
17    unfortunately, but that was just kind of what we had to
18    deal with.  And then it escalated a little more to that
19    with some actions by him that led to his arrest.  But
20    it was unfortunate.  That's certainly not what I
21    wanted.  I was hoping to just get him outside, maybe
22    chat with him a little bit, calm him down.  You know,
23    at the end of the day, I mean, he's -- he seems like an
24    angry guy.  He's certainly not a bad guy.  You know, I
25    -- I have no hard feelings against him, but, you know,
```

```
                                                         Page 15
 1         what the -- the overall spirit, my motive was to resume
 2         the meeting and just let's -- let's just move on.
 3    Q    Did you know how much longer he planned to speak, or
 4         did anyone ask him how much longer he had?
 5    A    No, but the -- no.  Short answer, no.
 6    Q    When you -- you said that there were some things he did
 7         as he was being removed that led to his arrest.  Do you
 8         remember, from the time that Sheriff Boan -- and I'm
 9         just going to -- I'm not using a technical -- Sheriff
10         Boan grabbed him or was holding him, you know, to
11         escort him out.
12    A    Uh-huh.
13    Q    I don't -- I want to be honest with you.  Sheriff Boan
14         told me that, at that point, all he wanted to do was
15         remove him.  He was not going to arrest him.
16    A    Right.  Right.
17    Q    So, between that time where he starts that process and
18         then gets him, you know, ultimately out the door and
19         into custody, what did you see that led you to believe
20         he should be arrested, or did you think he should be
21         arrested?
22    A    I know he flopped -- and, again, that's not -- you
23         know, it's just whatever.  And I know a deputy was
24         knocked over somehow, some way -- or not knocked over
25         but fell, or ended up on the ground.  Just say that.  I
```