```
               In the United States District Court
                   District of South Carolina
                       Columbia Division

             Case No.:  3:25-CV-01392-SAL-SVH


Mark Roote,                        )
                                   )
          Plaintiff(s),            )
                                   )
v.                                 )           Deposition
                                   )
Kershaw County; Kershaw            )                of
County Sheriff's Office;           )
Sheriff Lee Boan,                  )            Mark Roote
individually and in his            )
official capacity as               )
Kershaw County Sheriff;            )
and Danny Templar,                 )
                                   )
          Defendant(s).            )
```

Date:     November 11, 2025

Time:     11:27 a.m.

Location:  Via Remote Videoconference for All Parties


                        Reported by
                    Cynthia H. Patterson

Southern Reporting, Inc.
depos@southernreporting.net | 803.749.8100 | www.southernreporting.net

```
 1        council, but in terms of other citizens, do they
 2        not have equal rights not to be subjected to those
 3        things at a government meeting?
 4   A    If I was using bad language in a vulgar manner,
 5        maybe.  Maybe, but I wasn't.  Any language I used
 6        was directed.  It had a purpose, and its definition
 7        matched the purpose it was used for.
 8   Q    Uh-huh.  Okay.  Would you agree that you -- you
 9        flopped to the ground once you were -- tried to be
10        removed by Sheriff Boan from the meeting?
11   A    As soon as Frankie touched me, I entered passive
12        resistance.
13   Q    Okay.  Whatever you want to call it, you flopped to
14        the ground?
15   A    I sat down.
16   Q    Okay.  He didn't push you down?
17   A    No.
18   Q    This was a voluntary act on your behalf?
19   A    He put hands on me, I sat down.
20   Q    Okay.
21   A    He did not push me, but I did not -- I sat down.
22   Q    Are you aware of anything that allows you as a
23        citizen to actively/passively resist in the middle
24        of a county council meeting?
25   A    The Constitution.
```

```
 1   A    No.  Everyone else has the exact same rights I do.
 2        Council was stripping my rights.
 3   Q    Okay.  Your attorney provided a typed-out -- I take
 4        it as what you intended to read verbatim if you had
 5        been given the full allotted time; is that correct?
 6   A    Yes.
 7   Q    Did Sheriff Boan say anything to you that was not
 8        heard on the various videos?
 9   A    Well, he threatened to charge me with assaulting an
10        officer.
11   Q    When was that?
12   A    Shortly before placing me under arrest.
13   Q    Okay.  I'm talking about from the time that he
14        walked up to you while you were giving your
15        address, did he -- you obviously see him walk up to
16        you and start talking or saying something.  Did he
17        say anything to you?
18   A    I don't know if he was speaking to me or Danny.
19   Q    Do you recall him saying anything to you or to
20        Danny that was not recorded on any of the videos?
21   A    I do not recall at this time anything that is not
22        on the videos.
23   Q    Okay.  I'm just going to show you what the
24        affidavit -- probable cause affidavit was that was
25        submitted by Sheriff Boan.  "MR" -- is that you?
```

```
 1        Mark Roote?
 2   A    I would assume.
 3   Q    -- "was providing public comments during the county
 4        council meeting.  He was using profanity, and his
 5        time was up when Chairman Burns cut off the
 6        microphone."  Is there anything incorrect about
 7        that?
 8   A    My time had not been -- I had not been notified my
 9        time was up before Jimmy Jones started talking and
10        telling them they should speed me up or apply it
11        equally.  Then Chairman Burns said he was waiting
12        for the lawyer, and then the lawyer dung (verbatim)
13        the bell.
14   Q    Okay.  But I'm talking about when the microphone
15        was cut off, would you agree that Chairman Burns
16        instructed that the microphone be cut off at a
17        point?
18   A    He did.
19   Q    Okay.  "MR," being you, "continued to speak and was
20        first allowed to do so"; is that correct?
21   A    You see the video.
22   Q    I'm asking you if that's correct?
23   A    Yes.
24   Q    Okay.  So even though the mic -- the chair had cut
25        off the microphone -- or at least instructed that
```

3:25-cv-01392-SAL-SVH     Date Filed 11/17/25     Entry Number 14-11     Page 5 of 7
Mark Roote                                                                          Page 67
Roote v. Kershaw County, et al.                                                  11/11/2025

```
 1        the microphone be cut off and the microphone was
 2        cut off, you were still allowed to speak before
 3        Sheriff Boan came over to you; is that correct?
 4   A    He came over to me before the microphone was shut
 5        off, didn't he?
 6   Q    I'm just asking you if that was correct.  You were
 7        -- you continue to speak at the turned-off
 8        microphone?
 9   A    I did.
10   Q    Okay.  And then it says, "County Administrator
11        Templar told MR -- said that was enough and told
12        Sheriff Boan to remove MR from the podium"; is that
13        correct?
14   A    Yes.
15   Q    Okay.  "MR then refused to leave" -- is that
16        correct?
17   A    Yes.
18   Q    -- "and became passive aggressive by sitting on the
19        floor"; is that correct?
20   A    Yes.
21   Q    "Mr. R was then taken by the arms by Sheriff Boan
22        and Deputy Nelson and escorted to the exit"; is
23        that correct?
24   A    Yes.
25   Q    And at this point in time, when they're escorting
```

```
 1          you, they were escorting you by having to drag you

 2          across the floor; is that accurate?

 3    A     Yes.

 4    Q     "While being escorted, Deputy Nelson fell"; is that

 5          accurate?

 6    A     I did not see it.

 7    Q     You've watched the video, though; is that correct?

 8    A     I actually was not paying attention to Deputy

 9          Nelson when I watched the video.

10    Q     So since this lawsuit has been filed, you've never

11          watched the video and saw the deputy that was

12          behind you fall to the ground?

13    A     I have watched the video.  I did not pay attention

14          to the deputy falling.

15    Q     Okay.

16    A     I'm not saying it's not there.  It -- sure, it

17          probably is.

18    Q     All right.

19    A     I do not recall right now seeing the deputy fall.

20    Q     And you heard Sheriff --

21    A     I do remember the sheriff threatening to arrest me

22          with -- or charge me with assaulting an officer and

23          me saying, "What the fuck for?" before being

24          arrested.  I remember that.  I don't remember him

25          falling.
```

```
 1   Q    Okay.  Then it says, "MR continued to use profanity
 2        and the f-word."  You can hear that on the tape, so
 3        that's correct?
 4   A    Yes.
 5   Q    All right.  "Sheriff Boan then told MR he was under
 6        arrest"; is that accurate?
 7   A    No.  Well, yes, he did -- he did tell me I was
 8        under arrest, but not there.
 9   Q    Well, are you aware that you can hear him say, "I'm
10        putting you under arrest," on the video while
11        you're on the ground?
12   A    Yes.
13   Q    Okay.  So that is correct?
14   A    Okay.  I -- I was reading the order wrong.
15   Q    Yeah.
16   A    Yes.
17   Q    All right.  And in fact, what's not in here is
18        Sheriff Boan was telling you to put your hands
19        behind your back, and you were refusing to do that;
20        is that correct?
21   A    No, that is not correct.  He never told me to place
22        my hands behind my back.  He never released my arms
23        enough for me to feel comfortable -- releasing my
24        restraint to let my arms be moved behind my back.
25        I have a -- again, I had a pin in my shoulder.  My
```