In the United States District Court
District of South Carolina
Columbia Division

Case No.: 3:25-CV-01392-SAL-SVH

Mark Roote,                            )
                                       )
    Plaintiff(s),              )
                                       )
v.                                     )          Deposition
                                       )
Kershaw County; Kershaw                )              of
County Sheriff's Office;               )
Sheriff Lee Boan,                      )       Sheriff Lee Boan
individually and in his                )
official capacity as                   )
Kershaw County Sheriff;                )
and Danny Templar,                     )
                                       )
    Defendant(s).              )

Date:  November 11, 2025

Time:  11:01 a.m.

Location:  Via Remote Videoconference for All Parties

Reported by
Cynthia H. Patterson

3:25-cv-01392-SAL-SVH    Date Filed 11/17/25    Entry Number 14-13    Page 2 of 3
Sheriff Lee Boan                                                           Page 11
Roote v. Kershaw County, et al.                                          11/11/2025

```
 1        And -- and they usually go over the -- the -- the
 2        rules of the public comments prior to letting the
 3        first speaker start.
 4   Q    Okay.  Have you ever had to arrest anybody else at
 5        a council meeting?
 6   A    No.  No, I don't . . .
 7   Q    When you went to stand next to him, did someone
 8        tell you to do that, or did you kind of think that
 9        was the -- what needed to happen right then?
10   A    Yeah, I just felt like that's what needed to
11        happen.  I was trying to -- you know, again, our
12        role as peacemakers, we want to keep the peace.
13        You know, I want to let Mr. Roote say what he wants
14        to say, and -- and council, you know, gives that
15        microphone up for him to say what he's going to
16        say, and . . .
17   Q    Okay.  Same -- same question about when -- when it
18        moves from you standing next to him to you trying
19        to remove him.  Was that something you decided to
20        do, or did someone tell you this -- "We need to get
21        him out of here"?
22   A    I remember our county administrator, Danny,
23        standing up and coming over toward us.  But I mean,
24        at that point, it was -- it was my decision 100
25        percent that he needed to leave at that point
```

```
 1        there.  He's disrupted -- the council meeting had
 2        come to a stop.  They started cutting microphones,
 3        and I think they even went to a recess or
 4        something.  So he completely stopped the council
 5        meeting that other members of the public were there
 6        to watch and observe in an orderly manner, and he
 7        went well beyond that.  And so I mean, I -- I made
 8        a decision at that point there -- you know, we
 9        couldn't go forward with him standing there, and
10        that he needed to be escorted out.
11   Q    Okay.  And it's -- if I understand you, it is the
12        behavior between you starting to escort him out and
13        getting him out that led to the arrest for the
14        crime of public disorderly conduct?
15   A    Yeah.  Yeah, because like I said, my intention to
16        start with was just to escort him out -- when I
17        first put my hand on him and -- and got his
18        paperwork, was to escort him out and just tell him,
19        Hey, you got to leave."  You know, "You've
20        disrupted the council meeting enough," and -- but
21        that's when he dropped to the ground and you know,
22        forced us to drag him out and started yelling
23        profanity.  And at that point there, he's got -- he
24        got what I -- I definitely considered disorderly
25        conduct.
```